IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NORTH TEMPLE PROPERTY OWNERS COALITION, GAY HERRICK, AND THOMAS HORNE,<br><br>Plaintiffs,<br><br>v.<br><br>SALT LAKE CITY CORPORATION,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No.  2:10-cv-01063-CW<br><br>Judge Clark Waddoups |

## INTRODUCTION

Plaintiffs North Temple Property Owners Coalition, Gay Herrick, and Thomas Horne have brought this action against Salt Lake City Corporation (the "City") to ask the court to vacate or set aside the special assessment area enacted by the City on September 7, 2010.  Their complaint is based on the assertion that the City's actions were not in accordance with §§ 11-42-204 and 206 of the Utah Code.  In the alternative, if the court finds that the City's actions did not violate those statutes, Plaintiffs request that the court find that those statutes, as applied in this case, violate Plaintiffs' constitutional guarantees of equal protection and substantive due process.  In response, the City filed a 12(b)(6) motion to dismiss each of Plaintiffs' claims.  After due consideration of the parties' filings and oral arguments, and otherwise being fully advised, the court concludes that the City violated §§ 11-42-204 and 206 of the Utah Code.

## BACKGROUND

On or about February 16, 2010, the City sent a Notice of Intent (the "February NOI") to all owners with private property abutting a proposed special assessment area.  In accordance with Utah

Code Ann. § 11-42-202, the February NOI gave notice of a proposed special assessment area and set a date for a public hearing on April 12, 2010. Prior to the hearing, Plaintiffs timely submitted protests from sixty-one percent of the affected property owners. According to Utah Code Ann. § 11-42-206(3), if the governing body receives "adequate protests," they are required to abandon the project "as noticed." Utah Code Ann. § 11-42-102(1) defines "adequate protests" as timely written protests from at least fifty percent of the affected property owners. It is undisputed by the parties that the protest against the February NOI constituted an adequate protest. As a result of the successful protest, the City Council announced that they would change the assessment amounts and restart the notice, protest, and hearing process.

On June 15, 2010, the City sent a new Notice of Intent (the "June NOI") to all owners of private property abutting North Temple between 500W and 2400W. June NOI (Dkt No. 2, Ex. 2). This letter gave notice to the residents that the City was creating two special assessment areas: one for lighting and one for irrigation. The notice stated that the assessment would cover "75% of the installation and annual maintenance costs for a new street and pedestrian lighting system and boulevard landscaping irrigation system." *Id.* The estimated assessment for each property owner in the June NOI was $105 per front foot of property for installation, and additional annual maintenance assessments for up to 30 years of about $2 per front foot of property for lighting, and about $3 per front foot of property for irrigation. The notice also scheduled a public hearing for July 13, 2010. This date also served as the deadline for filing protests to the June NOI.

Following receipt of the June NOI, Plaintiffs gathered written protests from sixty-five percent of the affected property owners prior to the deadline. During the hearing on July 13, 2010, the property owners presented their protests. As with the protest against the February NOI, there

is no dispute that this constituted an adequate protest for the purposes of the Assessment Area Act, Utah Code Ann. § 11-42-102 *et seq.*  After receiving the results from the protesting property owners, the City closed the meeting without continuing the public hearing to a future date.

On August 17, 2010, Frank Gray, Director of Community and Economic Development for the City, submitted a recommendation.  In that recommendation, Mr. Gray noted that the protest vote among the affected property owners was sixty-four percent[1] overall, with eighty-nine percent of the protesters coming from owners between Redwood Road (1700W) and 2400W.   According to Mr. Gray, the protest rate for properties between 600W and Redwood Road was only forty-one percent.  Thus, in order to bring the number of filed protests within the modified area to fewer than fifty percent, he proposed modifying the special assessment areas to exclude the owners west of Redwood Road and east of 600W.  He stated that such a modification was permitted "by state statute and the [Special Assessment Act's] 'notice of intention.'"  (Complaint ¶ 16).

On September 7, 2010, without issuing a new notice of intent to create special assessment districts and without having continued the July 13, 2010 public hearing, the City Council adopted the modified assessment area which now extends between 600W and Redwood Road on North Temple.  The modified special assessment area was to have identical costs as those outlined in the June NOI.

Plaintiffs claim that the modification and adoption of the modified assessment area done outside of a public hearing after adequate protests had been filed violates Utah's Assessment Area Act ("Assessment Area Act").  In the alternative, if the court finds that the governing body did not

---

[1] The protest rate in Mr. Grey's recommendation differs by one percent from the rate alleged in the complaint, which alleges the protest rate to be 65%.  Because both numbers surpass the statutory protest requirement of fifty percent, the disparity is inconsequential.

violate the Assessment Area Act, Plaintiffs make five additional claims against the legality of the Assessment Area Act as it has been applied to them: (1) violation of the procedural and substantive due process provisions of the Utah and U.S. Constitutions; (2) violation of the uniform operation of laws and equal protection provisions of the Utah and U.S. Constitutions; (3) violation of the special service district provisions of the Utah Constitution; (4) deprivation of civil rights under 42 U.S.C. § 1983 based on violations of procedural and substantive due process; and (5) deprivation of civil rights under 42 U.S.C. § 1983 based on violations of Plaintiffs' equal protection rights. For the reasons below, the court finds that Defendant violated the Assessment Area Act when it modified the assessment area outside of the public hearing.

## ANALYSIS

### I.      STANDARD FOR A MOTION TO DISMISS

When evaluating a motion to dismiss under Rule 12(b)(6), the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *David v. City & Cnty. of Denver*, 101 F.3d 1344, 1352 (10th Cir. 1996). The court need not, however, consider allegations which are conclusory, or that "do not allege the factual basis" for the claim. *Brown v. Zavaras*, 63 F.3d 967, 972 (10th Cir. 1995); *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("[C]onclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based."). Moreover, the court is not bound by a complaint's legal conclusions, deductions, and opinions couched as facts. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).

Although all reasonable inferences must be drawn in the non-moving party's favor, a complaint will only survive a motion to dismiss if it contains "enough facts to state a claim to relief

that is plausible on its face." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Aschroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Under this standard, a claim need not be probable, but there must be facts showing more than a "sheer possibility" of wrongdoing. *Id.*

## II.   VIOLATION OF UTAH'S ASSESSMENT AREA ACT

The court turns first to Defendant's motion to dismiss Plaintiffs' claim that Defendant's Resolution No. 42 of 2010 (Dkt No. 9, Ex. 2), which enacted the modified assessment area proposed by Mr. Gray, violated Utah's Assessment Area Act. The Assessment Area Act spells out the legal requirements for a legislature to institute an assessment area. The term "assessment area" is defined in the Assessment Area Act as: "[A]n area . . . that is designated by a local entity . . . for the purpose of financing the costs of improvements, operation and maintenance, or economic promotion activities that benefit property within the area." Utah Code Ann. § 11-42-102. In order to adopt an assessment area, Utah Code Ann. § 11-42-201(2) specifies three main requirements. First, the governing body must provide notice of the impending assessment. Utah Code Ann. § 11-42-202. The governing body must then provide the affected property owners with an opportunity to protest. Utah Code Ann. § 11-42-203. Finally, the governing body must schedule a public hearing. Utah Code Ann. § 11-42-204.

When adequate protests are filed by greater than fifty percent of affected property owners, as was done here, subsection 11-42-206(3) of the Assessment Area Act states that "the governing body may not designate an assessment area as described in the notice." Subsection 11-42-206(1)

of the Act, however, states that after holding a public hearing, and subject to subsection 206(3), the governing body shall adopt a resolution or ordinance to either abandon the proposed assessment, or enact it either as described in the notice, "or with the changes made as authorized under subsection 11-42-204(4)."[2]   The City contends that subsection 11-42-204(4) should be interpreted to allow changes to be made outside of the public hearing after the hearing has been officially closed.   It further argues that subsection 206(1), by permitting the enactment of an assessment area *after* the public hearing, allows the governing body to enact the modified area after adequate protests are filed. The court, therefore, must first decide whether under subsection 11-42-204(4) Defendant can modify the assessment area outside of a public hearing.   Second, it must decide whether the Assessment Area Act permits Defendant to modify and enact the assessment area even after the affected property owners have filed adequate protests.

## A.        Canons of Interpretation

The United States Supreme Court has noted that the first step in any statutory interpretation is to look to the plain meaning of the words of the statute to determine whether there is an unambiguous answer to the claim at issue.   *Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 450 (2002).   A related rule of statutory interpretation is that the court must read the plain language of the statute as a whole.   This requires harmonization of separate provisions in the same statute with

---

[2]Subsection 11-42-204(4) reads as follows:
The governing body may make changes in:

(a) improvements proposed to be provided to the proposed assessment area; or

(b) the area or areas proposed to be included within the proposed assessment area.

Utah Code Ann. § 11-42-204

provisions in related chapters. *Archuleta v. St. Mark's Hosp.*, 238 P.3d 1044, 1046-47 (Utah 2009) (citations omitted).

A caveat to the plain language rule is, "that a court should not follow the literal language of a statute if its plain meaning works an absurd result." *Savage v. Utah Youth Vill.*, 104 P.3d 1242, 1248 (Utah 2004). Additionally, the Utah Supreme Court has indicated that it is a rule of statutory interpretation that chapter headings or statute titles can provide clarification in interpreting an ambiguous statute. *Am. Elec. Power Serv. Corp. v. State*, 619 P.2d 314, 315 (Utah 1980).

Finally, the Utah Supreme Court has noted that where the language of a tax statute is ambiguous, the correct practice  "is to construe taxation statutes liberally in favor of the taxpayer, leaving it to the legislature to clarify an intent to be more restrictive if such intent exists." *Salt Lake Cnty. ex rel. Cnty. Bd. of Equalization of Salt Lake Cnty. v. State Tax Comm'n ex rel. Kennecott Corp.*, 779 P.2d 1131, 1132 (Utah 1989).

**B.    Public Hearing**

Defendant's interpretation of the Assessment Area Act is based on the lack of specific language in subsection 11-42-204(4)  indicating whether or not the changes must be made during the hearing. Defendant argues that this omission is indicative of the Legislature's intent to allow governing bodies to make certain changes to the proposed special assessment areas outside of the hearings. This court finds such inferences inconsistent with the rules of statutory interpretation. This court finds it unconvincing that the Legislature's omission from section 11-42-204 of any direct terms specifying the timing or forum in which changes can be made constitutes an affirmative grant of power to governing bodies to change the proposed assessment outside of hearings.

### i.      Changes to the Noticed Assessment Area

First, it is important to acknowledge that the Assessment Area Act specifically allows governing bodies to make limited changes to proposed assessment areas without restarting the entire process of providing notice, opportunity for protest, and scheduling a hearing.  Subsection 11-42-204(4) explicitly states that governing bodies may make changes in the proposed improvements and the areas included in the proposed assessment area.  Utah Code Ann. § 11-42-204(4).  Furthermore, subsection 11-42-206(1)(b) allows governing bodies to enact special assessment area proposals either as described in the notice or with the changes permitted under subsection 11-42-204(4).  Therefore, the question for the court to decide is whether these permissible changes can be made outside of a public hearing.

### ii.      Interpreting the Statute as a Whole

When the plain language of a statutory provision is ambiguous, it is important to look at the statute in its entirety.  Defendant's interpretation fails to do this and looks only to two isolated subsections within 11-42-204.  Defendant argues by negative inference that because subsection 204(3) specifically mentions certain things that the governing body "shall" do "at the public hearing," that the omission of similarly specific language within subsection 204(4), which simply states that the "governing body may make changes in . . . the area or areas proposed to be included within the proposed assessment area," allows the governing body to make those changes at any time it wishes.  One problem with this argument however, is that it fails to account for the equally ambiguous language of subsection 11-42-204(2).

Subsection 11-42-204(2) states that governing bodies "may continue the public hearing from time to time to a fixed future date and time."  Like subsection 204(4), the plain language of

subsection 204(2) does not expressly state that such continuances must occur during the hearing. However, allowing the governing body to end the hearing and then wait weeks to send out written notice that the hearing was being continued until a future date and time would work an "absurd result." It would create ambiguity as to whether a hearing is open or closed. To avoid this ambiguity, the court concludes subsection 204(2) means that notice of the continuance must occur at the hearing. If a hearing is not properly continued, then notice procedures must begin anew. Thus, harmonizing the parallel structure of subsections 204(2) and 204(4), it follows that the scope is subsection 204(4) is similarly limited to what governing bodies may do during the hearings.

Additionally, in at least five different places in the Assessment Area Act, the legislature refers to actions to be taken at a public hearing by citing § 11-42-204 in its entirety.[3] This implies that the legislature intended each subsection within § 204 to describe only what should occur at the public hearing. Defendant's interpretation of the statute by contrast would work an absurd result in that it would mean that by referencing § 204 as a whole when addressing what is to occur at the public hearing, the legislature really only intended to reference certain parts of the § 204. Further illustrative of the legislature's intent to limit the subsections of § 11-42-204 only to events occurring at a public hearing is that the chapter heading of the section is "Hearing."

Therefore, the correct interpretation of subsection 11-42-204(4) is that changes made to the proposed assessment area described in the notice may be made only during the public hearing. Once

---

[3] Subsection 11-42-201(2)(c) states that the governing body must "hold a public hearing as provided in *Section 11-42-204*;" In subsection 202(1)(h) it reads, ". . . state the date, time, and place of the public hearing under *Section 11-42-204*;" Subsection 203(3) states, "An owner may withdraw a protest at any time before the conclusion of the hearing under *Section 11-42-204*;" subsection 206(1) states, "After holding a public hearing under *Section 11-42-204* . . . . ;" Lastly, subsection 207(3), states, ". . . and holds a hearing as required under *Section 11-42-204*."

the hearing is closed, changes made to a proposed assessment area must be done by re-starting the notice process, just as the City did after adequate protests were made to its initial proposal as noticed in its February NOI.  The governing body may however, rather than close the public hearing, continue it to a future date as authorized by subsection 204(2).  It would then be able to make changes at that continued hearing.  Inherent in this interpretation is recognition of the obvious intent of the statute to give the impacted property owners notice of a proposed change to the assessment area and an opportunity to voice any opposition to the change.

**C.      Enactment of the Assessment Area**

Defendant further violated the Assessment Area Act by enacting the Assessment Area after adequate protests were filed.  It is of paramount concern to this court that any meaningful protest on the part of affected property owners not be undercut. Subsection 11-42-206(1) states that after the public hearing, and subject to subsection 206(3), the governing body shall adopt a resolution or ordinance either abandoning the proposed assessment, or enacting it either as described in the notice, or with the changes made as authorized under subsection 11-42-204(4).  Defendant's interpretation of the provision ignores the clause that makes the enactment of the assessment area subject to subsection 206(3), which states that in the event that affected property owners submit adequate protests, the governing body may not enact the proposed assessment area.  Because the "subject to subsection 206(3)" clause modifies the rest of the section, it is correctly interpreted to mean that if the governing body learns that adequate protests have been filed, it overrides further discussion and changes and the council must begin again at the notice stage.

This interpretation follows the Utah Supreme Court's practice of construing taxation statutes liberally in favor of taxpayers. *Salt Lake Cnty. ex rel. Cnty. Bd. of Equalization of Salt Lake Cnty.*,

779 P.2d at 1132.  Accordingly, this court concludes that Utah Code Ann. § 11-42-206(3) precludes governing bodies from proceeding to enact a proposed or modified assessment area after the relevant property owners have filed adequate protests.

Thus, this court finds that Defendant's actions in this case were in violation of the Assessment Area Act.  First, Defendant violated subsection 11-42-204(4) by effecting changes to the proposed assessment area outside of the public hearing.  Additionally, Defendant violated subsection 11-42-206(3) by failing to abandon the noticed assessment after sixty-five percent of the affected property owners filed timely protests against the proposed enactment.

## **CONCLUSION**

In accordance with the findings spelled out above, this court DENIES in part and GRANTS in part Defendant's 12(b)(6) motion.  The court DENIES Defendant's motion to dismiss Plaintiff's first claim for relief under the Utah Area Assessment Area Act, Utah Code Ann. § 11-42-101 *et seq*. Because this court's ruling is dispositive on these claims, it GRANTS the motion to dismiss all claims in the alternative.  Additionally, because the court's ruling will likely determine the overall outcome of this dispute, the court will entertain motions for judgement based on the pleadings.

SO ORDERED this 3rd day of July, 2012.

BY THE COURT

Clark Waddoups

United States District Judge

11